Filed 5/7/13  P. v. Rogers CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D061644 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. Nos. SCD217436, SCD237940) |
| NOPADON ROGERS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Gale E. Kaneshiro, Judge.  Affirmed in part, reversed in part and remanded.

Daniel J. Kessler, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and William M. Wood, Deputy Attorneys General, for Plaintiff and Respondent.

Nopandon Rogers was convicted by a jury of one count of residential burglary (Pen. Code, § 459/460)[1] and one count of receiving stolen property (§ 496, subd. (a)). The court also found him in violation of an earlier grant of probation arising out of a guilty plea in an earlier proceeding. The court sentenced him to a total term of five years four months, and imposed fines and fees.

I

FACTS

A. <u>The October 14 Burglary and Recovery of a Stolen Item</u>

On Friday, October 14, 2011, between 6:30 and 9:30 p.m., an apartment in the University Town Center (UTC) area in which Ms. Kimura and her roommates lived was burglarized. Among the property stolen were three laptop computers (including Ms. Kimura's MacBook) and two cameras. That evening, Rogers phoned Mr. Arefi and offered to sell him a MacBook laptop computer. Rogers rode the bus to the Fashion Valley mall and rendezvoused with Arefi, who bought the MacBook laptop (later determined by police to be Kimura's MacBook) for cash. Shortly thereafter, Arefi sold Kimura's MacBook to Mr. Fratilapopa.

Kimura's MacBook contained a security program that took a screenshot of Fratilapopa trying to delete her account information, and informed Kimura the MacBook was somewhere in the area of Murrietta, California. Kimura found a Craigslist advertisement from the Murrietta area offering a MacBook for sale. Kimura gave this

---

1    All further statutory references are to the Penal Code unless otherwise specified.

information to police. The Craigslist seller was Fratilapopa, and Detective Adams arranged to meet with him. At the meeting, after confirming the MacBook was in fact Kimura's, police arrested Fratilapopa, who then identified Arefi as the supplier of the MacBook and helped police arrange a meeting with him. Police met with, and subsequently arrested, Arefi, who in turn identified Rogers as the person who supplied the stolen MacBook to him.

B. The October 15 Encounter with Rogers

One night after Kimura's apartment was burglarized, police were staking out the area because of a high number of similar burglaries when they observed Rogers in an apartment complex across the street from Kimura's apartment complex. Police contacted Rogers, who stated he did not know anyone in the area and claimed he had mistakenly gotten off a bus at the wrong stop. Rogers was carrying a pair of cloth gloves in his back pocket (although it was not cold enough to warrant wearing gloves) and a smaller bag that contained a larger, folded canvas bag. Police released Rogers and he rode a bus to the UTC mall.

Police went to and searched Rogers's residence later that night. Several laptop computer cases were found, as well as a nonworking laptop computer, two pairs of gloves, an MTS "Compass Card," and carrying bags. Rogers told officers he was studying computer technology and had learned how to "wipe computers clean."

The MTS Compass Card, which recorded the buses Rogers took during a certain period of time, showed he had boarded several buses on the evening of the burglary. A video image from a bus that traveled the route near the burglary showed he boarded the

3

bus approximately .4 miles from the burglarized apartment, and showed Rogers carrying a laptop computer, a black bag, and a camera around his neck. Kimura's roommates viewed the photographs of Rogers on the bus and reported the computer he was carrying looked similar to the computers they owned that had been stolen that night, and Kimura testified the camera worn by Rogers in the pictures from the bus looked similar to the camera she owned (which had been taken during the burglary) because of the distinctive lettering on the camera strap around Rogers's neck.

In a December 8, 2011, interview following his arrest, Rogers claimed he had not been in possession of a camera or a laptop since September 2011. However, when shown the bus video, he agreed it depicted him. He then recalled he had purchased laptops and cameras from "people on the buses all the time." He denied knowing Arefi or selling Kimura's MacBook laptop to Arefi.

II

ANALYSIS

A. The Trial Court Did Not Erroneously Admit Evidence Within the Ambit of a Pretrial In Limine Motion

Rogers asserts the trial court erroneously admitted evidence that violated an in limine pretrial ruling precluding evidence that Rogers was a suspect in other burglaries. He also asserts the court erred by denying his motion for a mistrial.

*Background*

Prior to trial, Rogers moved in limine to exclude any mention that he was a suspect in a series of burglaries around the Kimura apartment complex "because that was

4

mentioned in the officer's report and I just didn't want the police officer to blurt that out." The defense also wanted to exclude evidence that Rogers was a suspect in a February 2011 "hot prowl" incident at a different location. The defense also sought to exclude reference to the fact Rogers was contacted by police in the area of Kimura's apartment the night after the burglary.

The prosecutor explained it was the February 2011 incident, as well as the series of more recent burglaries, that "drew their attention toward [Rogers]" when they saw him the following night in the same area, and "when they contacted him he was [already] on their radar . . . ." The court permitted the prosecution to show Rogers was contacted by police in the area of Kimura's apartment the night after the burglary, but granted the motion to exclude the fact he "was specifically a suspect . . . in other cases," explaining "[t]hey can say they contacted him. They don't have to say why they contacted him." The court later admonished Officer Voss not to say Rogers was a suspect in other burglary cases.

*Analysis of Claim Regarding Officer Voss*

Rogers contends Officer Voss's testimony violated the in limine rulings, and therefore Rogers's mistrial motion should have been granted. He argues Officer Voss, when testifying to the evidence he gathered from Kimura's apartment, identified a photograph of the exterior of the apartment and stated it was relevant to the investigation because Kimura's apartment was a ground floor unit, and there had been a "series of burglaries in the UTC area that we were currently involved in investigating [that] were all consistent with ground floor entry." He later testified, as background to the

5

circumstances surrounding his contact with Rogers on October 15 in the area near Kimura's apartment, that he was "watching some of the units that appeared to be the same type of units that were previously being burglarized [when we] observed the defendant walking through the apartment complex across the street from the unit that was burglarized the day before."

Rogers claims these two references violated the trial court's in limine ruling. However, neither reference contained any statement that *police suspected* Rogers was a perpetrator in *other* burglaries, which was the import of the trial court's in limine ruling. Instead, both statements merely gave background context for the photograph and for why police happened to be present in the area on October 15 to come into contact with Rogers. Although he concedes no mention was made that police suspected him of perpetrating the other burglaries, he asserts the jury could have inferred he was in fact a suspect in other burglaries because he was seen in the area carrying gloves and an empty bag. However, the in limine ruling barred evidence that *police specifically suspected Rogers* of being the perpetrator of other burglaries, and Voss did not so testify; for this reason, the trial court explained when denying Rogers's mistrial motion that the testimony did not transgress the in limine ruling. His contention on appeal--that jurors might have drawn an inference falling within the scope of the in limine ruling by inferring police suspected Rogers was a perpetrator in *other* burglaries--is speculative. Indeed, Voss's testimony militated against such inference, because Voss testified police were investigating other burglaries in the area and, despite finding Rogers in that area with gloves and a bag, *nevertheless released him* after they contacted him. The trial court did

6

not abuse its discretion when it denied Rogers's mistrial motion based on Voss's testimony.

*Analysis of Claim Regarding Detective Adams*

Detective Adams testified she first became involved in Rogers's case when she was assigned to investigate the Kimura burglary, and she was assigned Kimura's burglary because she was also investigating a series of residential burglaries involving laptops similar to the Kimura burglary. Although Rogers concedes Adams made no mention that police suspected him of perpetrating the other burglaries, he asserts the jury could have inferred he was in fact a suspect in other burglaries because he was seen in the area carrying gloves and an empty bag. Once again, the in limine ruling barred evidence that *police specifically suspected Rogers* of being the perpetrator of other burglaries and, because Adams did not so testify, there was no violation of the in limine ruling.[2]

Rogers also complains that Detective Adams, during redirect examination, testified she showed a photographic lineup to Arefi that included Rogers's photograph because Detective Adams was "following a lead . . . trying to see whether he was involved in these cases." However, the context of Detective Adams's statement undermines his claim that she implied Rogers was a suspect in the other burglaries. Adams testified Arefi told police he obtained the stolen laptop from a man Arefi knew as

----

[2] Indeed, Rogers neither objected to this testimony nor moved for a mistrial, which reinforces our view that defense counsel at trial understood this testimony did not violate the in limine ruling. Moreover, even if some attenuated violation had occurred, the absence of an objection or mistrial motion would forfeit any complaint. (Evid. Code, § 353; *People v. Lightsey* (2012) 54 Cal.4th 668, 719.)

"Don," and then identified Rogers's photograph from a lineup as the man he knew as "Don." During redirect examination, Adams expanded on the circumstances surrounding Arefi's identification of Rogers in the photographic lineup, and testified it seemed as though Arefi:

> "did not want to identify anybody, and so he seemed a little hesitant, and so we chatted for a little bit, and then I asked him again to look at the photographs, and I told him he was in no way obligated to identify anybody. *At that time I had no idea that* [*Rogers*] *was the person he knew as Don or involved in these cases.* It was just somebody that I was looking at. *I had no evidence at that time that* [*Rogers*] *had committed any crime.* I was following a lead . . . trying to see whether he was involved in these cases. . . . *I was trying to figure out who* [*Arefi*] *purchased the laptop from, and that was not necessarily* [*Rogers*] *or the person* [*who*] *committed the burglary. I just wanted to know who* [*Arefi*] *purchased the laptop from . . . .*" (Italics added.)

The context of Adams's testimony satisfies us that, because she specifically said (1) she had no evidence at that time that Rogers had committed any crime, (2) she was just trying to follow the supply chain, and (3) who Arefi bought the laptop from was "not necessarily . . . the person [who] committed the burglary," the testimony did not offend the in limine ruling barring testimony that Rogers was a suspect in the other burglaries.

B. The Sentencing Claims

Rogers contends the trial court erred by imposing a second restitution fine when, as part of the sentence imposed in the present case, it revoked his probation granted in an earlier case. In 2009, Rogers was granted probation in case No. SCD217436. As part of the order granting probation, the court ordered Rogers to pay a $200 restitution fine under section 1202.4, subdivision (b). The court also imposed a probation revocation

8

restitution fine in the same amount pursuant to section 1202.44, suspended unless probation was later revoked.

After Rogers was convicted in the present case, the court's sentence for the present conviction included an order revoking his probation in case No. SCD217436 and imposing a prison term for one of the convictions in that case. However, the court's oral pronouncement of sentence thereafter became somewhat garbled. The court stated:

> "[The Court]: In [case No. SCD217436] it does appear that there is a balance of restitution in the amount of $4,432.99. The Court will order that that restitution be made to the victim in [case No. SCD217436] forthwith or as provided in . . . section 2085.5 . . . . The Court will now order that [Rogers] pay the $200 restitution fine pursuant to . . . section 1202.4, previously imposed by Judge Lewis, and the Court is now mandating he pay that because probation was revoked. The court is mandated to impose a second restitution fine also in the amount of $200, pursuant to . . . section 1202.44. The second restitution fine will be suspended unless parole is revoked. [¶] . . . [¶]
>
> "[The Clerk]: Are you imposing that probation revocation fee pursuant to [section 1202.44]?
>
> "[The Court]: Yes. That's the second fee that will be stayed.
>
> "[The Clerk]: It looks like they're asking for it to be imposed because it was previously stayed.
>
> "[The Court]: And I did indicate that I had previously imposed the 1202.44 $200 fine that Judge Lewis had previously stayed pending revocation of probation. I have imposed that today."

Rogers asserts the court erred because, when it said, "The Court will now order that [Rogers] pay the $200 restitution fine pursuant to . . . section 1202.4, previously imposed by Judge Lewis," the court was ordering a *second* $200 restitution fine in case No. SCD217436, which was beyond the court's power. The People do not suggest the

court had the *power* to impose a second section 1202.4 fine, but instead assert the court was merely imposing the *same* section 1202.4 fine "previously imposed by Judge Lewis." However, it appears the court misspoke when it referred to the "$200 restitution fine . . . previously imposed by Judge Lewis" as a *section 1202.4 fine,* because the court (referring to that fine) said it was "now mandating he pay that *because probation was revoked*." It appears the court was intending to refer to the *section 1202.44 fine* imposed by Judge Lewis (*not* the section 1202.4 fine), because the court mandated it be paid "*because probation was revoked*" and later said (in response to the query from the court clerk) the court had "indicate[d] that I had previously imposed the 1202.44 $200 fine that Judge Lewis had previously stayed pending revocation of probation. I have imposed that today."

We construe the intent of the court's oral pronouncement of sentence as intended to vacate the stay on the $200 probation revocation restitution fine, imposed by Judge Lewis under section 1202.44, rather than to impose or otherwise disturb the section 1202.4 fine imposed by Judge Lewis, which remains in force despite revocation of probation. (*People v. Chambers* (1998) 65 Cal.App.4th 819, 822; accord, *People v. Arata* (2004) 118 Cal.App.4th 195, 203.) To the extent the abstract of judgment is ambiguous, the court shall on remand amend the abstract of judgment to reflect this intent.

The People argue on appeal that a second and mandatory fine was omitted from the sentence: imposition of a stayed $200 parole revocation restitution fine under section 1202.45. Rogers concedes this was error and should be corrected on remand.

Rogers contends the court erroneously imposed a $30 fine, pursuant to Government Code section 70373, in case No. SCD217436, because that statute was not in effect at the time he pleaded guilty in that case. The People concede on appeal this was error and must be deleted.

DISPOSITION

The court on remand shall amend the sentence and abstract of judgment consistent with this opinion and vacate the stay on the $200 probation revocation restitution fine in Case No. SCD217436 imposed under section 1202.44, vacate the order to pay a $200 restitution fine in Case No. SCD217436 imposed at sentencing in this case under section 1202.4, subdivision (b), impose a $200 parole revocation restitution fine in this case No. SCD237940 under section 1202.45 and vacate the $30 fine under Government Code section 70373 in Case No. 217436. As so amended, the judgment and sentence are affirmed.

McDONALD, J.

WE CONCUR:

NARES, Acting P. J.

AARON, J.

11